UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MICHAEL,<br><br>                    Plaintiff,<br><br>v.<br><br>LA JOLLA LEARNING INSTITUTE, INC., a California corporation;<br>BALBOA SCHOOL CORPORATION, a California corporation,<br><br>                    Defendants. | Case No.: 17-CV-934 JLS (MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 21) |

      Presently before the Court is Defendants La Jolla Learning Institute Inc. and Balboa School Corporation's Motion to Dismiss. ("Mot.," ECF No. 21). Also before the Court are Plaintiff Paul Michael's Response in Opposition to ("Opp'n," ECF No. 24) and Defendants' Reply in Support of ("Reply," ECF No. 25) the Motion, as well as Plaintiff's Sur-Reply to Defendants' Reply ("Sur-Reply," ECF No. 29). The Court vacated the hearing and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF No. 26. Having considered the Parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

///

///

## BACKGROUND

Plaintiff is a former employee of Balboa City School, a company Plaintiff believes is wholly owned and operated by Defendant Balboa School Corporation doing business as Defendant La Jolla Learning Institute (together, "Defendants"). Second Amended Complaint ("SAC") ¶ 7, ECF No. 14. Plaintiff alleges that at all relevant times, Defendants employed twenty-five or more full-time employees. *Id.* ¶ 7–8.

Defendants hired Plaintiff as a full-time Technical Coordinator in January 2001. *Id.* ¶ 9. Throughout his employment with Defendants, Plaintiff participated in Defendants' employee beneficiary plans. *Id.* ¶ 12. In spring of 2016, Plaintiff submitted a letter of resignation and the employment relationship ended. *Id.* ¶ 13. On June 6, 2016, Defendants informed Plaintiff that his health insurance plan was terminated. *Id.* ¶ 14. Plaintiff's final paycheck was dated June 15, 2016, *id.* ¶ 13, and his participation in Defendants' health insurance plan officially ended June 30, 2016. *Id.* ¶ 15.

Plaintiff alleges that "[b]etween June 15, 2016, and July 30, 2016, [he] did not receive a notice of his Consolidated Omnibus Budget Reconciliation Act ("COBRA") election rights to continue coverage under [Defendants'] plan." *Id.* ¶ 18. On July 1, 2016, Plaintiff wrote to Defendants alerting them that he had not received a COBRA notification or election notice and asked Defendants "to refrain from interfering with [his] rights under [the Employee Retirement Income Security Act of 1974 ("ERISA")]." *Id.* ¶ 19.

In late June and early July 2016, Plaintiff received two letters from Kaiser Permanente, the healthcare provider under Defendants' health insurance plan, informing Plaintiff that his coverage was terminated but that Plaintiff may be eligible for, among other services, COBRA coverage. *Id.* ¶ 20. The letters stated that Plaintiff would need to contact his former employer to further explore his eligibility. *Id.*

Between August and December 2016, Plaintiff reached out to Defendants multiple times regarding Defendants' alleged failure to provide Plaintiff with a COBRA election notice. *Id.* ¶ 21. On or about December 16, 2016, Plaintiff contacted Kaiser to

///

learn more about his COBRA rights; Kaiser told Plaintiff to contact Defendants for such information. *Id.* ¶ 23.

On December 20, 2016, Defendants contacted Plaintiff to inform him that Defendants expected to receive documentation from Kaiser and, once received, that documentation would be sent to Plaintiff. *Id.* ¶ 24. In this letter, Defendants also provided Plaintiff with Kaiser's phone number to call to find out more information about COBRA. *Id.*

On the same day, Plaintiff asked Defendants in writing for the identity of the plan administrator. *Id.* ¶ 25. On or about December 23, 2016, Plaintiff contacted a Kaiser representative, who confirmed that Defendant La Jolla Learning Institute was the plan administrator and that Kaiser could provide no further information on Plaintiff's COBRA rights. *Id.* ¶ 26.

Plaintiff alleges that on January 16, 2017, he again requested in writing the identity of the plan administrator from Defendants. *Id.* ¶ 27. On January 18, 2017, Defendants responded that Kaiser was the healthcare provider and plan administrator; additionally, Defendants stated that they informed Kaiser about Plaintiff's termination within the statutory time frame and that Kaiser sent Plaintiff information about his COBRA rights. *Id.* ¶ 28. As of November 27, 2018, Plaintiff claims he never received a COBRA notice. *Id.* ¶ 29.

On May 8, 2017, Plaintiff filed suit against Defendants. *See generally* ECF No. 1. On November 27, 2018, Plaintiff filed the operative Second Amended Complaint, alleging two causes of action under ERISA and COBRA. ECF No. 14. Plaintiff seeks statutory penalties under 29 U.S.C. § 1132(c)(1), based on (1) Defendants' alleged failure to provide requested ERISA plan documents as required under 29 U.S.C. § 1024(b)(4), and (2) Defendants' failure to provide a COBRA notice and election form within thirty-days of Plaintiff's termination as required under 29 U.S.C. § 1166(a). *See generally* SAC.

Defendants then filed the present Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* Mot. Defendants argue that both of

Plaintiff's causes of action fail to state claims upon which the Court can grant relief. Mot. at 3–6. Defendants also argue that Plaintiff does not have Article III standing because he failed to allege a concrete injury in fact. *See* Mot. at 6–7. The Court will address the standing issue first, moving then to the failure to state a claim.

## MOTION TO DISMISS UNDER RULE 12(b)(1)

### I. Legal Standard

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing he has standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *see also In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of establishing subject-matter jurisdiction on a motion to dismiss for lack of subject-matter jurisdiction.").

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, Defendants' challenge is facial because it disputes whether Plaintiff alleged a sufficiently particularized injury to confer Article III standing. Accordingly, the Court will assume the truth of Plaintiff's factual allegations and draw all reasonable inferences in favor of Plaintiff. *See Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

### II. Analysis

Under Article III of the United States Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real

4

17-CV-934 JLS (MDD)

consequences for the parties. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A threshold requirement for justiciability in federal court is that the plaintiff have standing to assert the claims brought. *Id.* Article III standing requires that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

In this case, Defendants attack only the injury in fact element. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "Particularized injuries 'affect the plaintiff in a personal and individual way,' while a 'concrete injury must be *de facto*; that is, it must actually exist.'" *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1548). Because Plaintiff is raising multiple claims, he "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Defendants contend that Plaintiff fails to allege standing because "Plaintiff has not suffered anything other than an abstract injury" caused by alleged procedural statutory violations. Mot. at 8. Defendants contend that Plaintiff's allegations of statutory violations alone are insufficient to confer standing. *Id.* Defendants rely primarily on their reading of the Supreme Court's decision in *Spokeo* to support these contentions. *Id.*

In *Spokeo*, a consumer brought an action alleging that a website published inaccurate information about him, violating the Fair Credit Reporting Act. *Spokeo*, 136 S.Ct. at 1544–45. The Ninth Circuit, focusing only on the particularity prong of the injury in fact element, found plaintiff's alleged violations of his statutory rights alone were sufficient to satisfy the injury in fact requirement of Article III. *Id.* at 1546. The Supreme Court reversed, holding that "Article III standing requires a concrete injury even in the context of a statutory violation" and, thus, a plaintiff cannot "allege a bare procedural violation,
///

divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

The Supreme Court went on to explain, however, that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id*. Thus, "[w]hile *Spokeo* may have clarified certain principles regarding the 'concreteness' requirement of an injury in fact, it did not disturb the long-standing principle, invoked by [Plaintiff] here, that a plaintiff suffers an injury in fact when she is denied access to helpful information subject to disclosure under a statute." *McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 162 (S.D.N.Y. 2017). Examples in which a violation of a procedural right constitutes injury in fact include a group voter's "inability to obtain information" that the Federal Election Campaign Act requires to be made publicly available, *see Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998), and the inability to receive documents from committees that are covered by the Federal Advisory Committee Act, which requires that certain documents and meetings be accessible to the public, *see Pub. Citizens v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). In these instances, where a "plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute," *Fed. Election Comm'n*, 524 U.S. at 21, "a plaintiff . . . need not allege any additional harm beyond the one Congress has identified" to show injury in fact. *Spokeo*, 136 S. Ct. at 1550.

In this case, Plaintiff's allegations suffice to meet the injury in fact requirement. "[T]he Supreme Court has recognized that the purpose of ERISA's disclosure requirement is to 'ensure that the individual participant knows exactly where he stands with respect to the plan.'" *McFarlane*, 274 F. Supp. 3d at 162 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (internal alterations omitted)). Like the injuries complained of in *Federal Election Commission* and *Public Citizens*, Plaintiff's injuries in this case stem from Defendants' alleged failure to provide Plaintiff information required by statute, specifically the ERISA plan documents and COBRA benefit information. SAC ¶¶ 29–31. Additionally, Plaintiff alleges that Defendants' failure to provide COBRA

information and an election form resulted in a concrete injury because it prevented Plaintiff from obtaining COBRA continuation coverage. *Id.* at 31; Opp'n at 8–9. These are sufficiently concrete and particularized injuries to confer Article III standing. *See McFarlane*, 274 F. Supp. 3d at 164 (holding plaintiff's allegations of failure to provide ERISA plan documents sufficient to show injury in fact); *see also Bryant v. Wal-Mart Store, Inc.*, No. 16-24818-CIV, 2019 WL 3542827, at *3 (S.D. Fla. Apr. 18, 2019) (holding plaintiff sufficiently alleged a concrete and particularized injury resulting from defendant's failure to provide COBRA notice).

The Court also finds that Plaintiff satisfies the remaining standing requirements of causation and redressability. Although Defendants do not challenge these elements, the Court concludes that Plaintiff's injury is fairly traceable to Defendants' conduct and this Court can provide the relief sought. Thus, the Court finds that Plaintiff has Article III standing to bring his claims and **DENIES** Defendants' Motion under 12(b)(1).

## MOTION TO DISMISS UNDER RULE 12(b)(6)

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept as true all material allegations in the complaint and must construe the complaint and all reasonable inferences

drawn therefrom in the light most favorable to Plaintiff. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II. Analysis

### A. Request to Convert Defendants' Rule 12(b)(6) Motion Into a Rule 56 Motion

"In general, courts cannot consider material outside of the pleadings in ruling on a motion to dismiss." *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996). Federal Rule of Civil Procedure 12(d), however, "gives courts the discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (citing *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981). Rule 12(d) specifically states that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

In their Reply, Defendants argue that the Court should convert the Motion to Dismiss under Rule 12(b)(6) into a Motion for Summary Judgement under Rule 56. Reply at 3–4. Defendants make this request because they submitted declarations and multiple exhibits, external to Plaintiffs SAC, that they rely on in support of the Motion to Dismiss. *See generally* ECF Nos. 21-1, 21-2. Defendants contend that Plaintiff had sufficient notice that the Court could convert the motion because Defendants attached the materials to their

///

Motion, Plaintiff argued against conversion in his Opposition, and "Plaintiff submit[ted] his own declaration (i.e., his own evidence) in support of the [O]pposition." Reply at 4.

Plaintiff argues that converting the Motion to Dismiss to a motion for summary judgment is not appropriate in this case. Opp'n at 6–7; Sur-Reply at 4–5. Plaintiff contends that discovery is necessary to uncover whether Defendants employed more than twenty-five employees. Sur-Reply at 5. Plaintiff further argues that the evidence submitted by Defendants is inadmissible and, thus, the Court could not consider it even if the Court were to convert the Motion. *Id.*

The Court refuses to convert the Motion to Dismiss into a motion for summary judgment. "Converting Defendants' Motion into one for summary judgment would be premature at this point in the case," in part because "[t]he record discloses [that] no discovery [has been] conducted." *Lacey v. Malandro Commc'n, Inc.*, No. CV-09-01429-PHX-GMS, 2009 WL 4755399, at *4 (D. Ariz. Dec. 8, 2009). Plaintiff therefore has not been afforded a reasonable opportunity to respond to and present all material pertinent to Defendants' contentions that it did not employ over twenty employees during the relevant period. *See Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir. 1985) (noting a reasonable opportunity to respond "must include time for discovery necessary to develop facts justifying opposition to the motion") (citing *Portland Retail*, 662 F.2d at 645; Fed. R. Civ. P. 56) Accordingly, "the Court will not consider Defendant[s'] submissions that fall outside the pleadings in resolving the Motion to Dismiss." *See Lacey*, 2009 WL 4755399, at *4.

### B. Plaintiff's First Cause of Action: Failure to Produce Plan Documents Under ERISA

Plaintiff's first cause of action alleges that Defendants failed to provide Plaintiff with documents and information he requested in writing, as required by ERISA. SAC ¶¶ 32–44. Under ERISA, the plan administrator is required to provide a copy of the "latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan

is established or operated" upon written request of any participant or beneficiary. 29 U.S.C. § 1024(b)(4). A plan administer that fails or refuses to provide the requested plan documents "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day." 29 U.S.C. 1132(c)(1).

Plaintiff asserts in his SAC that he made three separate written requests for information and plan documents, on July 1, 2016, December 20, 2016, and January 16, 2017.[1] SAC ¶ 42. In his Opposition, Plaintiff abandons the allegation he made such a request on July 1, 2016, focusing only on the later two alleged requests.[2] Opp'n at 3–4.

In the December 20, 2016 request, Plaintiff's counsel, in response to an email from Defendants' counsel regarding the COBRA benefits notification, wrote: "I still have [a] question: Who is the Plan Administrator for the Plan?" ECF No. 14-1 at 33. Defendants' counsel replied minutes later, stating "I do not understand the question." *Id.* Plaintiff's counsel responded: "A group benefits plan must have a designated Plan Administrator. Who is the Plan Administrator for the health insurance plan offered through [Balboa City School]?" *Id.* Defendants' counsel did not respond. SAC ¶ 27.

On January 20, 2016, Plaintiff emailed Defendants once again. The email states in relevant part:

> It has been more than seven months since Mr. Michael requested information regarding his COBRA election and notification rights. To my knowledge, he still has not received that documentation. I will be filing a complaint on his behalf in federal court on Friday, January 20[,] unless I receive

---

[1] Plaintiff attached copies of the alleged requests made on December 20, 2016, and January 16, 2017, to his SAC. *See* ECF No. 14-1 at 33–35, 37. As part of the complaint, the Court may consider these documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss.") (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[2] Even if Plaintiff did not abandon his allegation that he requested plan documents on July 1, 2016, based on the allegations in his SAC, Plaintiff does not state a claim for the same reasons the Court finds the December 20, 2016, and January 16, 2017 requests insufficient articulated below.

> information from you that actually demonstrates your client's compliance with [the] law.

ECF No. 14-1 at 37.

Defendants contend that Plaintiff's written requests were insufficient to support a claim for failure to produce plan documents. Mot. at 5. Defendants assert that nowhere in these communications does Plaintiff actually request a document production and, even if the Court construes the requests as requests for documents, Plaintiff is referring to COBRA-related documents, not documents covered under section 1124(b)(4). *Id.*

Plaintiff responds that the written requests are sufficient to fall under the mandatory production rule of section 1024(b)(4). Opp'n at 4. Plaintiff contends that the identity of the plan administrator is required to be in the summary plan documents governing any health plan. *Id.* Plaintiff argues that because the identity of the plan administrator must be contained in the summary plan document, Defendants were required to provide the summary plan document. *Id.* In support of his argument, Plaintiff contends that a "clear-notice" standard should apply and that, under this standard, Defendants had notice of his request. Opp'n at 4–5. (citing *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 707 (6th Cir. 2014) (adopting clear-notice standard) (citing *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 145 (3d Cir. 2007) (adopting the standard and collecting similar cases from the Second, Fifth, Seventh, and Tenth Circuits)). The Court agrees that the clear-notice standard is appropriate in this case.

"Under the clear-notice standard, claimants seeking documents pursuant to § 1024(b)(4) must 'provide clear notice to the plan administrator of the information they desire.'" *Cultrona*, 748 F.3d at 707 (quoting *Kollman*, 487 F.3d at 145); *see also Williams v. Caterpillar, Inc.*, 944 F.2d 658, 667 (9th Cir. 1991) ("Some courts have suggested that where a pension plan participant fails to make a specific request for the information at issue, he has no litigable claim."). In deciding whether there was clear-notice, the Court may consider all "the circumstances surrounding the document request." *Cultrona*, 748 F.3d at 707.

The Court finds that Plaintiff's request for the identity of the plan administrator failed to give clear notice to Defendants that Plaintiff sought the summary plan document. As the December 20, 2016 and January 16, 2017 communications show, Plaintiff never actually requested any document, let alone the summary plan document, by name. The Court declines to require Defendants to connect the dots of Plaintiff's request, forcing them to determine that the information requested was included in the summary plan document and that, despite his silence, Plaintiff was in fact asking for that document. While there may be some requests for information that clearly indicate a document production is necessary, "who is the plan administrator" is not such a request. Considering the context of the communications, Plaintiff made the request in response to Defendants' email concerning COBRA beneficiary notices, and neither party even mentioned the summary plan document. In fact, Defendants expressly indicated they did not understand the first request, and Plaintiff's follow-up did not make clear that he was in fact requesting the summary plan document.

Moreover, under section 1024(b)(4), only "*plan administrators* are required, upon the request of a participant or beneficiary, to provide the requesting party with a copy of various plan documents." *Becker v. Williams*, 777 F.3d 1035, 1039 (9th Cir. 2015) (emphasis added). The fact that Plaintiff requested *the identity of the plan administrator* belies its argument that it was making a request *to the plan administrator* for the summary plan document.

For these reasons, the Court concludes that Plaintiff failed to provide clear-notice to Defendants that he sought production of the summary plan document. *See Williams*, 944 F.2d at 667 (holding that the district court did not abuse its discretion in finding that appellants "failed to offer any proof . . . that they had ever requested any plan descriptions from appellees"); *see also Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 135 (2d Cir. 2001) (denying civil penalties where plaintiff did not ask for the summary plan document but sought only specific information for type and amount of any vested benefits she had

///

accrued). The Court therefore **GRANTS** Defendants Motion regarding Plaintiff's first cause of action.

### C. *Plaintiff's Second Cause of Action: Failure to Provide COBRA Notice*

Plaintiff's second cause of action alleges that Defendants failed to send a qualified beneficiary notice following his termination, as required under COBRA. SAC ¶¶ 45–57. Under COBRA, employers are required to provide notice to employees of continuation rights within thirty days of a termination of coverage. 29 U.S.C. § 1161(a). That requirement, however, applies only to employers with over twenty employees. 29 U.S.C. § 1161(b).

Defendants contend that Plaintiff's second cause of action for failure to provide COBRA notice must be dismissed because "Defendant[s] did not employ more than 20 employees in any applicable pay period" and, thus, "COBRA does not apply." Mot. at 6. Defendants support this argument entirely with the declarations and exhibits attached to their Motion. *See generally* ECF Nos. 21-1, 21-2. As explained above, the Court does not find these documents appropriate to consider at this time. *See supra* Section II.A. Without these documents, the Court is left with Plaintiff's allegations in his SAC that "at all times relevant to [the] Complaint, Defendant[s] . . . employed 25 or more full-time employees." SAC ¶¶ 7–8. For the purposes of this motion, the Court accepts these allegations as true, *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678), and finds Plaintiff adequately pled his second cause of action. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's second cause of action.

## CONCLUSION

Based on the forgoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 21). Specifically, the Court **DENIES** Defendants' Motion under 12(b)(1) for lack of standing, **GRANTS** Defendants' Motion under 12(b)(6) regarding Plaintiff's first cause of action, and **DENIES** Defendants' Motion under 12(b)(6) regarding Plaintiff's second cause of action. Plaintiff may file an amended

complaint <u>within 30 days of the date that this Order is electronically docketed</u>. Should Plaintiff fail timely to file an amended complaint, this action will proceed on Plaintiff's surviving second cause of action.

**IT IS SO ORDERED.**

Dated: September 30, 2019

Hon. Janis L. Sammartino
United States District Judge